**United States District Court**
**Western District of Oklahoma**

| | |
|---|---|
| PUBLIC INTEREST LEGAL FOUNDATION, INC.<br><br>*Plaintiff,*<br><br>v.<br><br>PAUL ZIRIAX, in his official capacity as the Secretary of the State Election Board for the State of Oklahoma,<br><br><br>*Defendant.* | Case No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Public Interest Legal Foundation (the "Foundation") brings this action for violations of Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507(i), and the Fourteenth Amendment to the United States Constitution.

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 2201, 2202, and 42 U.S.C. § 1983.

2.      This Court also has jurisdiction under 52 U.S.C. § 20510(b) because the action seeks injunctive and declaratory relief under the NVRA. Plaintiff complied with the NVRA's prelitigation notice requirements, and Defendant failed to cure the violation of law in the time the NVRA affords. *See* 52 U.S.C. § 20510(b)(1)-(2).

3.      Venue in this Court is proper under 28 U.S.C. § 1391(b)(1), because the Defendant resides in this district, and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

1

**PARTIES**

4.      The Foundation is a non-partisan, public interest organization incorporated and based in Alexandria, Virginia. The Foundation seeks to promote the integrity of the electoral process nationwide through research, education, remedial programs, and litigation. The Foundation regularly utilizes the NVRA's Public Disclosure Provision and state and federal open records laws that require government records be made available to the public. Using records compiled through these open records laws, the Foundation analyzes the programs and activities of state and local election officials to determine whether lawful efforts are being made to keep voter rolls current and accurate, and to determine whether eligible registrants have been improperly removed from voter rolls. Where necessary, the Foundation takes remedial action based on issues revealed by these public records. In order to advance the public education aspect of its organizational mission, the Foundation uses records to produce and disseminate reports, articles, blog and social media posts, and newsletters. The Foundation also uses records to inform and advise lawmakers, including members of Congress and state legislators, about different circumstances, including possible amendments to the NVRA, compliance with federal law by state officials, and whether the NVRA's four articulated legislative purposes are actualized.

5.      Defendant Paul Ziriax is the Secretary of the State Election Board, and as such he is Chief Election Official for the State of Oklahoma. Secretary Ziriax has "the authority to implement programs for confirmation of voter registration and for removal of ineligible voters in compliance with general Oklahoma election law and requirements of the National Voter Registration Act of 1993." 26 O.S. § 2-107.

6.      Secretary Ziriax is sued in his official capacity only.

**BACKGROUND**

*Oklahoma Law*

7.      Title 26, Chapter A1, Section 7-103.2 of the Oklahoma Statutes governs access to the "current list of all registered voters in each precinct" (hereinafter "Statewide Voter Registration List"). 26 O.S. § 7-103.2(A)(1).

8.      Section 7-103.2(B)(1)(a)-(d) provides that the Secretary of the State Election Board shall:

> Ensure that an electronic copy of the [Statewide Voter Registration List] described in subsection A of this section is made available, free of charge, to the following:
>
> > a. bona fide residents of this state who are citizens of the United States,
> > b. official representatives of political parties recognized by the laws of this state,
> > c. candidates for office in this state and their official representatives, or
> > d. other persons authorized by state law.

9.      Section 7-103.2(B)(1)(a)-(d) therefore restricts access to the Statewide Voter Registration List to certain preferred entities and individuals, including Oklahoma residents, official representatives of political parties, and candidates for office.

10.     Subsection (d) ("other persons authorized by state law") does not broaden the scope of eligible recipients. Authoritative documents and Secretary Ziriax himself recognize only the first three categories of preferred recipients. In his letter denying the Foundation's NVRA request, Secretary Ziriax stated the relevant statute "ensur[es] access by U.S. citizens who are Oklahoma residents, candidates and political parties," Ex. 2 at 1, and both the "OK Election Data Warehouse Request to Access Voter Registration List" form and the "OK Election Data Warehouse Information Packet" identify only the first three categories of preferred entities or

3

individuals as eligible to receive the Statewide Voter Registration List. *OK Election Data Warehouse Request to Access Voter Registration List*, OKLAHOMA STATE ELECTION BOARD, https://oklahoma.gov/content/dam/ok/en/elections/ok-election-data-warehouse/edw-form-vrlist.pdf (last accessed June 10, 2026); *OK Election Data Warehouse Information Packet*, OKLAHOMA STATE ELECTION BOARD, at 5, https://oklahoma.gov/content/dam/ok/en/elections/ok-election-data-warehouse/readme-vrlist.pdf (last accessed June 10, 2026).

11.     Those preferred entities and individuals described in paragraph 8 may request full access to the Statewide Voter Registration List from the Oklahoma State Election Board.

12.     The Foundation is not one such preferred entity or individual described in paragraph 8.

13.     The individuals and entities that do not fall within § 7-103.2(B)(1)(a)-(d) may apply for "basic" access to the OK Election Data Warehouse ("EDW"), which includes precinct information, corresponding polling places, the list of voters who requested an absentee ballot, and the list of deleted voters for the past 24 months. *Voter Registration List*, OKLAHOMA STATE ELECTION BOARD, https://oklahoma.gov/elections/candidates/voter-registration-list.html (last accessed June 10, 2026).

14.     The Oklahoma State Election Board makes clear: "Basic access to the EDW **does not** include access to voter registration lists." *Id.* (emphasis in original).

### The NVRA's Public Disclosure Provision

15.     The NVRA provides, in relevant part, "Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted

for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1) (hereafter, the "Public Disclosure Provision").

16.     The Tenth Circuit recently found that "making voter data unavailable for close public scrutiny disrupts the purpose and intended effects of the NVRA." *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1082 (10th Cir. 2025). The Tenth Circuit went on to hold that "[b]y refusing to produce VRF's requested voter data per the Use Restrictions, we find that the State violated the NVRA." *Id.* at 1088.

17.     The Public Disclosure Provision "embodies Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334-35 (4th Cir. 2012).

18.     The Public Disclosure Provision is designed to be "available to any member of the public" and to "ensure that election officials are fulfilling their list maintenance duties." *Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *12 (S.D. Fla. Mar. 30, 2018). The Public Disclosure Provision "convey[s] Congress's intention that the public should be monitoring the state of the voter rolls and the adequacy of election officials' list maintenance programs. Accordingly, election officials must provide full public access to all records related to their list maintenance activities, including their voter rolls." *Id*. at *12-13; *Project Vote/Voting for Am., Inc.*, 682 F.3d at 339 ("It is selfevident [sic] that disclosure will assist the identification of both error and fraud in the preparation and maintenance of voter rolls.").

19.     In the words of the First Circuit, the Public Disclosure Provision "evinces Congress's belief that public inspection, and thus public release, of Voter File data is necessary

5

to accomplish the objectives behind the NVRA." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 54 (1st Cir. 2024).

***Defendant Is Denying the Foundation Full Access to Oklahoma's Statewide Voter Registration List***

20.     On April 20, 2026, the Foundation emailed Secretary Ziriax a letter ("First Notice Letter") explaining it "would like to receive, purchase, or inspect an electronic copy of the Oklahoma statewide voter registration list," but that current Oklahoma state laws prevented it from receiving full access to the registration list. Ex. 1 at 1.

21.     The First Notice Letter notified Secretary Ziriax that the State Election Board is in violation of the NVRA for failure to permit inspection of voter list maintenance records as required by 52 U.S.C. § 20507(i), and in violation of the Equal Protection Clause of the Fourteenth Amendment. Ex. 1 at 1.

22.     The First Notice Letter also notified Secretary Ziriax that if the NVRA violation was not cured within 20 days, a lawsuit may be filed against him, as permitted by the NVRA, 52 U.S.C. § 20510(b). Ex. 1 at 2.

23.     On May 8, 2026, the Foundation received an email from the Oklahoma State Election Board with a letter attached, signed by Secretary Ziriax, denying the Foundation's request. Ex. 2. The letter explained, in part:

> Oklahoma's electronic voter list does not fall under "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" as defined by the NVRA. Oklahoma's electronic voter list, as referenced in 26 O.S. § 7-103(B), is the list maintained and made available for free to certain persons under Oklahoma law. The Oklahoma State Legislature has exercised its authority under the United States and Oklahoma Constitutions to limit access to this list.

Ex. 2 at 1.

6

24.    On May 12, 2026, the Foundation responded to Secretary Ziriax's letter ("Second Notice Letter") via email and notified him that the State Election Board remains in violation of the NVRA and the Foundation had no choice but to pursue relief in federal court. Ex. 3 at 1.

25.    As of the date of this filing, the Foundation received no response from Secretary Ziriax or any other person at the Oklahoma State Election Board office in response to the Second Notice Letter.

**COUNT I**
**Violation of Section 8(i) of the NVRA, 52 U.S.C. § 20507(i)**

26.    The Foundation realleges the preceding paragraphs as if fully stated herein.

27.    The requested record(s) are in the possession, custody, and control of the Defendant.

28.    The Statewide Voter Registration List described in 26 O.S. § 7-103.2(A)(1) is a record covered by the Public Disclosure Provision of the NVRA, 52 U.S.C. § 20507(i). *See Voter Reference Found., LLC*, 160 F.4th at 1088 (implicitly finding that the voter list is a covered document when it held: "By refusing to produce VRF's requested voter data per the Use Restrictions, we find that the State violated the NVRA"); *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 49 (1st Cir. 2024) ("Maine's Voter File is a 'record[] concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters' and is thus subject to disclosure under Section 8(i)(1)."); *Pub. Int. Legal Found., Inc. v. Knapp*, 749 F. Supp. 3d 563, 568-570 (D.S.C. 2024); *Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 438-442, 446 (D. Md. 2019); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 723 (S.D. Miss. 2014) ("The Court likewise concludes that the Voter Roll is a 'record' and is the 'official list[] of eligible voters' under the NVRA Public Disclosure Provision."); *Bellitto*, 2018 U.S. Dist. LEXIS 103617, at *13 ("[E]lection officials must provide

full public access to all records related to their list maintenance activities, including their voter

rolls.").

29.     The Public Disclosure Provision authorizes and entitles the Foundation to inspect

and copy, or otherwise purchase and receive, the voter registration list described in 26 O.S. § 7-

103.2(A)(1). *See Voter Reference Found., LLC*, 160 F.4th at 1086 (rejecting argument that

requestors must physically inspect records where state law does not require physical inspection

and election officials never insisted upon physical inspection).

30.     Oklahoma law requires that a person requesting full access to the Statewide Voter

Registration List described in 26 O.S. § 7-103.2(A)(1) to be either an Oklahoma resident, official

representative of a political party, or a candidate for office. 26 O.S. § 7-103.2(B)(1)(a)-(d).

31.     Secretary Ziriax is enforcing this requirement and is therefore preventing the

Foundation from inspecting and copying records that the Foundation is otherwise entitled to

inspect and copy under the NVRA.

32.     By denying the Foundation the ability to obtain records it otherwise could obtain

under the Public Disclosure Provision of the NVRA, 26 O.S. § 7-103.2(B)(1) conflicts with

federal law.

33.     Any Oklahoma statute, regulation, practice or policy that conflicts with, overrides,

or burdens the NVRA, a federal statute, is preempted and superseded under the Supremacy

Clause and the Elections Clause of the Constitution of the United States.

34.     Oklahoma's access restrictions found in 26 O.S. § 7-103.2(B)(1) are therefore

preempted, invalid, and unenforceable.

35.     Defendant's refusal to provide the Foundation full access to the Statewide Voter

Registration List violates the NVRA.

36.    The Foundation provided Defendant—the chief election official of Oklahoma—with written requests and written notices of the NVRA violation alleged herein, thereby satisfying the NVRA's pre-litigation notice requirement, 52 U.S.C. § 20510(b)(1). *See* Exs. 1, 3.

37.    Defendant has not cured his violation of the NVRA within the 20 days permitted by the NVRA. *See* 52 U.S.C. § 20510(b)(2).

38.    Defendant's violation of the NVRA is causing the Foundation to suffer a concrete informational injury because the Foundation does not have records and information to which it is entitled under federal law. *FEC v. Akins*, 524 U.S. 11, 21 (1998) ("[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute").

39.    The Foundation received the State Voter Registration List in the past, before Oklahoma restricted who qualified to receive the List, and used the List for research and as part of its educational programming. *See Critical Condition: American Voter Rolls Filled with Errors, Dead Voters, and Duplicate Registrations*, PUBLIC INTEREST LEGAL FOUNDATION (Sept. 16, 2020), https://publicinterestlegal.org/pilf-files/Report-Critical_Condition-Web-FINAL-FINAL.pdf.

40.    The Foundation's informational injury is causing the Foundation to suffer additional adverse effects and downstream consequences.

41.    First, by denying the Foundation full access to the requested Statewide Voter Registration List, Defendant is preventing the Foundation from proposing best practices and solutions that will assist Oklahoma in carrying out its voter list maintenance programs and activities to help ensure Oklahoma's voter roll is accurate and current. *See* 52 U.S.C. § 20501(b)(4) (explaining that one of the NVRA's purposes is "to ensure that accurate and current

9

voter registration rolls are maintained"); *see also, e.g., Best Practices for Achieving Integrity in Voter Registration*, PUBLIC INTEREST LEGAL FOUNDATION (June 21, 2017), https://publicinterestlegal.org/pilf-files/PILF-best-practices-report-FINAL.pdf; *Steeling the Vote: Allegheny County, PA Reveals How Citizenship Verification Protects Citizens and Immigrants Alike* at 15 (Proposed Solutions), PUBLIC INTEREST LEGAL FOUNDATION (July 12, 2018), https://publicinterestlegal.org/pilf-files/Steeling-the-Vote-7.11.18.pdf.

42. Second, by denying the Foundation full access to the requested Statewide Voter Registration List, Defendant is preventing the Foundation from speaking (and educating) about matters of public importance—including erroneous disenfranchisement of voters and the currency and accuracy of the Statewide Voter Registration List. *See, e.g., Critical Condition*, *supra* ¶ 39.

43. Third, by denying the Foundation full access to the requested Statewide Voter Registration List, Defendant is impairing the Foundation's ability to provide policy advice to state and local officials and legislative guidance and testimony to Congress regarding state compliance with voting rights legislation based on the Statewide Voter Registration List. *See, e.g., Chairman Steil Hosts Roundtable on The Make Elections Great Again Act*, COMMITTEE ON HOUSE ADMINISTRATION (Feb. 25, 2026), https://cha.house.gov/2026/2/chairman-steil-hosts-roundtable-on-the-make-elections-great-again-act; *see also ICYMI: PILF Testified to U.S. Congress on Preventing Aliens from Voting*, PUBLIC INTEREST LEGAL FOUNDATION (May 17, 2024), https://publicinterestlegal.org/election-frontline/icymi-pilf-testified-to-u-s-congress-on-preventing-aliens-from-registering-and-voting/.

44. Fourth, by denying the Foundation full access to the requested Statewide Voter Registration List, Defendant impairs the Foundation's accumulation of current and timely

10

institutional knowledge upon which it depends to operate effectively and accurately. This impairment harms the Foundation's ability to accurately and comprehensively engage in programming and educate the public and election officials about the state of the voter roll.

45.    Fifth, by denying the Foundation full access to the requested Statewide Voter Registration List, the Foundation is unable to study and analyze Oklahoma's voter list maintenance activities and Oklahoma's compliance with state and federal laws, and other best practices and to write and publish reports based on the analyses. *See, e.g., 2025 California Voter Roll Study*, PUBLIC INTEREST LEGAL FOUNDATION (Sep. 19, 2025), https://publicinterestlegal.org/research/2025-california-voter-roll-study/; *2025 North Carolina Voter Roll Study*, PUBLIC INTEREST LEGAL FOUNDATION (Aug. 4, 2025), https://publicinterestlegal.org/research/2025-north-carolina-voter-roll-study/.

46.    The Foundation is currently planning to draft and publish a report informing the public and policy makers about specific and general errors contained in the Statewide Voter Registration List, as it did previously before Oklahoma modified its laws to prevent the Foundation from having full access to the Statewide Voter Registration List. *See, e.g., Critical Condition*, *supra* ¶¶ 39, 42. The Foundation has published such reports using voter roll data in other states. *See, e.g., Motor Voter at 30: Aliens on Chicago's Voter Rolls*, PUBLIC INTEREST LEGAL FOUNDATION (May 2023), https://publicinterestlegal.org/wp-content/uploads/2023/05/Chicago-Report-Gloss-Print.pdf*; see also New Jersey: Tens of Thousands of Voter Registrations are Duplicated, Missing Critical Information*, PUBLIC INTEREST LEGAL FOUNDATION (June 2022), https://publicinterestlegal.org/wp-content/uploads/2022/06/NJ-Data-Review-2022-1P-FINAL-4.pdf.

47.    Among other things, the Foundation's planned report may document deceased registrants, duplicated records, and other errors, mistakes, and inaccuracies as well as compare Oklahoma's current list maintenance practices to the Foundation's prior report on the same practices. *See Critical Condition*, *supra* ¶¶ 39, 42, 46. Because Defendant is denying the Foundation full access to the Statewide Voter Registration List, the Foundation cannot draft and publish this planned report or conduct the planned comparison.

48.    Defendant's violation of the NVRA is thus frustrating, impairing, and harming the Foundation's ability to carry out specific planned activities and its organizational mission, a mission that is consistent with the NVRA's purposes.

49.    The Foundation will continue to be injured by the Defendant's violations of the NVRA unless and until the Defendant is enjoined from continuing to violate the law.

50.    The Foundation is a person aggrieved by a violation of the NVRA, as set forth in 52 U.S.C. § 20510(b)(1).

## COUNT II
### Violation of the Fourteenth Amendment Arising Under 42 U.S.C. § 1983

51.    The Foundation realleges the preceding paragraphs as if fully stated herein.

52.    The Defendant acted under color of state law to deprive the Foundation of rights secured by the Fourteenth Amendment.

53.    The Fourteenth Amendment prohibits a government entity from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In other words, "all persons similarly situated should be treated alike." *Ashaheed v. Currington*, 7 F.4th 1236, 1249 (10th Cir. 2021); *Grosjean v. Am. Press Co.*, 297 U.S. 233, 244 (1936) ("[A] corporation is a 'person' within the meaning of the equal protection and due process of law clauses" of the Fourteenth Amendment.).

54.     The Defendant is violating the Foundation's Fourteenth Amendment rights by denying full access to the Statewide Voter Registration List to certain individuals and entities, without a legitimate purpose.

55.     Inspection rights under the NVRA belong to the "public." 52 U.S.C. § 20507(i)(1). The Foundation and those who may receive full access under Oklahoma law are similarly situated because they are both members of the "public." Yet Defendant is enforcing the NVRA in a discriminatory manner, granting full access to preferred entities and individuals while denying full access to the Foundation. The Fourteenth Amendment does not tolerate such discriminatory enforcement of federal law.

56.     By limiting full access to the Statewide Voter Registration List to Oklahoma residents, official representatives of political parties, and candidates for office in Oklahoma and their official representatives, Defendant treats the Foundation differently than the preferred categories of entities and individuals who request the same public records. *See Donrey Media Grp. v. Ikeda*, 959 F. Supp. 1280, 1286 (D. Haw. 1996) (holding that "Plaintiffs have raised valid claims under § 1983 and under the Equal Protection Clauses of the Federal and State Constitutions because access to government records is granted to some members of the public and not others").

57.     There is no rational basis for limiting full access to the Statewide Voter Registration List to Oklahoma residents and partisan individuals and organizations, especially where federal law grants rights to the "public." 52 U.S.C. § 20507(i)(1). In fact, Oklahoma has no authority to limit access in the face of a federal command to the contrary, even if Oklahoma could otherwise rationally explain its decision. No state law can nullify an act of Congress. *Bishop v. Fed. Intermediate Credit Bank*, 908 F.2d 658, 660 (10th Cir. 1990) ("A state law is

13

also invalid to the extent that it 'actually conflicts with a … federal statute'…, or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes of Congress.'") (internal citations omitted); *Hillsborough Cnty. v. Automated Med. Laboratories*, 471 U.S. 707, 713 (1985) ("Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law.").

58.     Furthermore, any rational basis Oklahoma could envision is undermined by the fact that the records requested are public records under federal law, and there is no applicable statute prohibiting recipients with full access from providing the list to ineligible requestors situated like the Foundation, should they choose to do so. *Judicial Watch, Inc.*, 399 F. Supp. 3d at 445 (explaining the ability to circumvent disclosure restrictions via straw-purchaser reveals the emptiness of the rationale upon which the restriction is allegedly based).

59.     The Foundation will continue to be injured by the Defendant's violation of the Fourteenth Amendment unless and until the Defendant is enjoined from continuing to violate the law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment:

1.     Declaring that Defendant is in violation of Section 8(i) of the NVRA by refusing the Foundation full access to the requested Statewide Voter Registration List;

2.     Declaring that Section 8(i) of the NVRA preempts and supersedes any requirement or restriction in 26 O.S. § 7-103.2(B)(1), and any other Oklahoma statute, regulation, practice or policy that prevents the Foundation from inspecting and copying the requested Statewide Voter Registration List or that places restrictions on the use of the Statewide Voter Registration List;

14

3.      Declaring that Defendant is in violation of the Fourteenth Amendment to the United States Constitution.

4.      Ordering Defendant to grant the Foundation full access to the Statewide Voter Registration List described in 26 O.S. § 7-103.2(A)(1) or otherwise ordering Defendant to allow the Foundation to inspect and copy the same information.

5.      Permanently enjoining Defendant from denying requests to receive, inspect, and copy similar voter registration lists in the future;

6.      Ordering the Defendant to pay the Foundation's reasonable attorney's fees, including litigation expenses and costs, pursuant to 52 U.S.C. § 20510(c) and 42 U.S.C. § 1988(b); and,

7.      Granting the Foundation further relief that this Court deems just and proper.

Dated: June 16, 2026.
For the Plaintiff Public Interest Legal Foundation:

/s/ *Ryan Haynie*
Ryan Haynie, OBA No. 32796
OCPA Center for Law & Liberty
1401 N. Lincoln Blvd.
Oklahoma City, OK 73104
Tel: (405) 590-6070
ryan@ocpathink.org

Noel H. Johnson* (Wisconsin Bar #1068004)
Carolyn Valdes* (Kentucky Bar #101013)
Public Interest Legal Foundation, Inc.
107. S. West Street, Suite 700
Alexandria, Virginia 22314
Tel: (703) 745-5870
Fax: (888) 815-5641
njohnson@PublicInterestLegal.org
cvaldes@PublicInterestLegal.org
* *Motion for admission pro hac vice forthcoming*

*Attorneys for Plaintiff Public Interest Legal Foundation*

15