**United States District Court**
**Western District of Oklahoma**

| | |
|---|---|
| **PUBLIC INTEREST LEGAL FOUNDATION, INC.**<br><br>*Plaintiff*,<br><br>v.<br><br>**PAUL ZIRIAX,** in his official capacity as the Secretary of the State Election Board for the State of Oklahoma,<br><br>*Defendant*. | Case No. 5:26-cv-01440-HE |

**PLAINTIFF PUBLIC INTEREST LEGAL FOUNDATION'S**
**RESPONSE TO MOTION TO DISMISS**

Ryan Haynie, OBA No. 32796
OCPA Center for Law & Liberty
1401 N. Lincoln Blvd.
Oklahoma City, OK 73104
Tel: (405) 590-6070
ryan@ocpathink.org

Noel H. Johnson* (Wis. Bar #1068004)
Carolyn Valdes** (Ky. Bar #101013)
Public Interest Legal Foundation, Inc.
107 S. West Street, Suite 700
Alexandria, Virginia 22314
Tel.: (703) 745-5870
Fax: (888) 815-5641
njohnson@PublicInterestLegal.org
cvaldes@PublicInterestLegal.org
**Motion for admission pro hac vice forthcoming*
***Motion for admission pro hac vice granted*

*Counsel for Plaintiff*

Dated: August 10, 2026

## INTRODUCTION

Oklahoma gives its residents the benefit of federal law but denies it to all others. Oklahoma may not so discriminate. The NVRA's text gives inspection rights to the "public." 52 U.S.C. § 20507(i)(1). And states may not impose additional qualifications inconsistent with the NVRA's text. *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013) ("*ITCA*").

The Foundation has standing because state-sanctioned discrimination causes actionable injury. As does the denial of public records. Yet those injuries also have personal and concrete consequences here. The Foundation previously used the Oklahoma voter roll to speak about matters of public importance, including errors affecting voting rights. Oklahoma then changed its law to conceal the voter roll. The Foundation is silenced. Congress's goals are obstructed.

The Oklahoma voter roll is a public record under the NVRA. *See Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1082 (10th Cir. 2025). The Complaint alleges Oklahoma law obstructs the NVRA's purposes and is preempted and invalid. *Id*. The motion to dismiss must be denied.

## BACKGROUND

### I. Legal Background

Thirty years ago, Congress decided that decisions about who is and is not eligible to vote should be transparent and publicly accessible. That decision is codified in Section 8(i) of the National Voter Registration Act of 1993 ("NVRA"), which provides, "Each State shall maintain for at least 2 years and shall make available for public inspection

and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1) (hereafter, the "Public Disclosure Provision").

Oklahoma law does not allow for "public inspection" of its statewide voter registration list ("SVRL"). Instead, Oklahoma, through its Election Data Warehouse, operates a two-tiered disclosure scheme, under which only Oklahoma citizen-residents and political persons may access the SVRL. *See* Compl. ¶¶ 7-14; 26 O.S. § 7-103.2(A)(1), (B)(1)(a)-(d). The State Election Board refers to this level of disclosure as "full access." About Voter List ("Full") Access, OKLAHOMA STATE ELECTION BOARD, https://oklahoma.gov/elections/candidates/voter-registration-list.html (last accessed August 10, 2026).

Everyone else may apply for only "basic" access, which "**does not** include access to voter registration lists." About Basic Access, OKLAHOMA STATE ELECTION BOARD, https://oklahoma.gov/elections/candidates/voter-registration-list.html (last accessed August 10, 2026) (citing 26 O.S. § 7-103.2) (emphasis in original). Oklahoma law thus denies non-residents like the Foundation from SVRL access.

## II. Factual Background

On April 20, 2026, the Foundation emailed Defendant a letter explaining it "would like to receive, purchase, or inspect an electronic copy of the Oklahoma statewide voter registration list," but that current Oklahoma law prevents the Foundation from receiving access to the SVRL. Compl. ¶ 20. The Foundation notified Defendant that Oklahoma law

violates the NVRA by denying access to records that are public under the NVRA, and that the Foundation would pursue legal action against him if the NVRA violation was not cured. *Id*. ¶¶ 21-22.

Defendant thereafter confirmed that the Foundation is not permitted to receive the SVRL, citing 26 O.S. § 7-103(B), which limits access to Oklahoma resident-citizens and political persons. Compl. ¶ 23.

In response, the Foundation notified Defendant that the State Election Board remains in violation of the NVRA. Compl. ¶ 24.

Defendant did not respond further. Compl. ¶ 25. This action followed. ECF No. 1.

## STANDARD OF REVIEW

"To survive a motion to dismiss" under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must also accept the allegations as true when reviewing a facial attack on jurisdiction under Fed. R. Civ. P. 12(b)(1).

## ARGUMENT

### I. The Foundation has Standing.

The complaint alleges two bases for standing—the NVRA, Compl. ¶¶ 26-50, and the Equal Protection Clause, Compl. ¶¶ 51-59. Oklahoma challenges only one basis—the NVRA, ECF No. 13 at 6-11, thereby conceding the second basis. Regardless, the Foundation has standing on both grounds.

**A. The Foundation has Standing Under the NVRA.**

**i. A Request and a Denial Establish Standing under Sunshine Laws.**

The Tenth Circuit has not addressed standing under the NVRA's Public Disclosure Provision, so it is an open question in this Court.[1] Defendant urges this Court to ignore the Ninth Circuit's most recent opinion, and "follow the lead" of the Third and Sixth Circuits, which ruled that a plaintiff denied public records must also show "downstream consequences" from failing to receive the requested records. ECF No. 13 at 6-11 (citing *Pub. Int. Legal Found. v. Sec'y of the Commonwealth of Pa.*, 136 F.4th 456 (3d Cir. 2025) and *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613 (6th Cir. 2025)). In other words, in those courts, public records are not public records unless the plaintiff proves that he really needs them.

That's not how sunshine laws were designed to work. Sunshine laws reflect Congress's judgment that the public has a *right* to know what its government is doing—not a *need* to know.

The best-known sunshine law is the Freedom of Information Act ("FOIA"). Since its enaction, standing under FOIA has required just two things: a request and a denial. Supreme Court decisions "interpreting the Freedom of Information Act have never suggested that those requesting information under it need show more than that they sought and were denied specific agency records." *Pub. Citizen v. United States Dep't of*

[1] The Tenth Circuit has found standing under the NVRA's Public Disclosure Provision based on the credible threat of prosecution. *See Voter Reference Found.*, 160 F.4th at 1078 ("[T]he undisputed facts show that there is a concrete injury in fact 'caused' by the State's willingness to prosecute VRF, which can be redressed by a favorable decision.").

*Justice*, 491 U.S. 440, 449 (1989) (collecting cases). "Anyone whose request for specific information has been denied has standing to bring an action; the requester's circumstances—why he wants the information, what he plans to do with it, what harm he suffered from the failure to disclose—are irrelevant to his standing." *Zivotofsky v. Sec'y of State*, 444 F.3d 614, 617 (D.C. Cir. 2006).

FOIA's standing framework applies to other federal sunshine laws. In *Public Citizen*, the Supreme Court instructed that "[t]here is no reason for a different rule" under the Federal Advisory Committee Act. *Pub. Citizen*, 491 U.S. at 449. Nor is there a reason under the Federal Election Campaign Act. *FEC v. Akins*, 524 U.S. 11, 21 (1998). The rule is simple: "[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Id*.

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) did not change the rule, it affirmed it. *Spokeo* cites *Public Citizen* and *Akins* as cases where a plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Id*. at 342 (emphasis in original).

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) also affirmed the rule. *TransUnion* did not involve the denial of records under a sunshine law; it involved formatting errors under a credit reporting law. *See TransUnion*, 594 U.S. at 441 ("This case does not involve such a public-disclosure law."). "*Akins* and *Public Citizen* do not control" the standing inquiry for formatting errors. *Id*. But those cases do control the inquiry in "cases involv[ing] denial of information subject to public-disclosure or sunshine laws that entitle all members of the public to certain information." *Id*.

The NVRA's Public Disclosure Provision is sunshine law "that entitle[s] all members of the public to certain information." *TransUnion*, 594 U.S. at 441. FOIA's request/denial framework therefore applies equally under the NVRA. And that's exactly what the Ninth Circuit held in *Pub. Int. Leg. Found., Inc. v. Nago*, 174 F.4th 664 (9th Cir. 2026), a nearly identical action concerning whether the Foundation is entitled to receive Hawaii's statewide voter roll under the NVRA's Public Disclosure Provision.

*Nago* rejects the argument that *TransUnion* overruled *Akins* and *Public Citizen*. *Nago*, 174 F.4th at 674. "Because *Akins* and *Public Citizen* remain binding, a denial of access to information that a plaintiff alleges must be disclosed pursuant to a public disclosure or sunshine provision causes a concrete injury sufficient for standing. **No additional adverse effects need be shown**." *Id*. (emphasis added).

*Nago* also addressed Defendant's suggestion that *TransUnion* modified the standing analysis for sunshine laws, explaining that three years after *TransUnion*, the Supreme Court again acknowledged that *Akins* continues to govern the standing analysis when federal law requires dissemination of "information upon request by members of the public," *id*. at 674 (citing *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 396 (2024), in turn, citing *Akins*, 524 U.S. 11).

Defendant's argument that the SVRL is not with the NVRA's scope, ECF No. 13 at 11-21, addresses the merits of the Foundation's claims, and as such it plays no role in the standing inquiry. *See Warth v. Seldin*, 422 U.S. 490, 500 (1975) (explaining that "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal").

**ii. The Foundation's Standing in the Third and Sixth Circuits was Decided After Discovery and Summary Judgment Briefing.**

Neither *Sec'y of the Commonwealth of Pa.* nor *Benson* supports dismissal at the Rule 12(b)(6) stage. Those actions were dismissed at the Rule 56 stage, after the factual record was fully developed. The courts' paths make sense because "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Alleged injuries are also construed "in the light most favorable to the plaintiff." *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1146 (10th Cir. 2015). Dismissal is likewise inappropriate in this case.

**iii. The Foundation Alleges Personal and Concrete "Consequences" Caused by the Denial of its NVRA Request.**

Even if the Foundation must plausibly allege more than it was denied public records, it has done so. Most notably, the Foundation alleges that it "is currently planning to draft and publish a report informing the public and policy makers about specific and general errors contained in the Statewide Voter Registration List[.]" Compl. ¶ 46.

The Foundation's plans are neither vague nor speculative, as Defendant suggests. The report would be drafted, but for Defendant's denial. And the Foundation knows its anticipated content— "deceased registrants, duplicated records, and other errors, mistakes, and inaccuracies" contained in the SVRL along with a comparison of "Oklahoma's current list maintenance practices to the Foundation's prior report on the same practices." Compl. ¶ 47. That the report may ultimately document some things and

not others does not reduce the Foundation's plans to the "speculative" level, *see* ECF No. 13 at 10-11, especially under the Rule 12 standard.

To the contrary, the Foundation's plans and consequences are more than plausible considering that the Foundation has previously written a similar report using SVRL data. Compl. ¶ 46. The Foundation cannot do what it did before due to Defendant's conduct. There is no "consequence" more concrete.

The Tenth Circuit's decision in *Voter Reference Found. v. Torrez* confirms that the Foundation's plans bear a sufficient nexus to Congress's objectives. The "NVRA's primary goal," the court explained, is "providing broad transparency and circulation of such voter data."[2] *Voter Reference Found*, 160 F.4th at 1082. "Put simply, making voter data unavailable for close public scrutiny disrupts the purpose and intended effects of the NVRA." *Id*. The First Circuit concurs. *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 54 (1st Cir. 2024) ("[A]nalysis and subsequent dissemination of Voter File data to the public is necessary if members of the public, or organizations such as PILF, are ever to identify, address, and fix irregularities in states' voter rolls by exercising their private right of action under the NVRA.").

---

[2] The NVRA has four purposes, not one, as defendant suggests, Doc. 13 at 11. *See* 52 U.S.C. § 20501(b). And the Tenth Circuit rejected the notion that Congress ranked "encourag[ing] voter registration" above the NVRA's other purposes. *See Voter Reference Found.*, 160 F.4th at 1083. The Tenth Circuit may have meant that transparency and circulation of voter data is the "primary goal" of *Section 8(i)*, but any nexus requirement is satisfied, nonetheless, because transparency and circulation further all of the NVRA's explicit purposes.

This Court is bound by the Tenth Circuit—not the Third or Sixth. Even so, those Courts were looking for the type of specific plans the Foundation alleges here. *Sec'y of the Commonwealth of Pa.*, 136 F.4th at 468 ("We also note that PILF submitted no evidence of any specific plans for the records it sought relating to the purpose of the NVRA."); *Benson*, 136 F.4th at 631 ("Neither the complaint nor PILF's briefs identify, for example, specific projects, research papers, or educational outreach efforts that were directly impacted by Secretary Benson's failure to produce relevant records.").

The Foundation's intended report standing alone is enough of a reason to deny Defendant's motion. But it doesn't stand alone. The Foundation's complaint includes *five* other ways Defendant's conduct is adversely affecting the Foundation. Compl. ¶¶ 41-46. Among those "consequences" is the inability to speak about "erroneous disenfranchisement of voters," Compl. ¶ 42, a "consequence" even Defendant concedes is aligned with the NVRA's objectives, *see* Doc. 13 at 11 (explaining that Congress sought to facilitate "the expansion of voter participation in federal elections") (citation omitted).

Before *Nago* reaffirmed the request/denial framework, similar alleged "consequences"—including the inability to prepare "specific categories of reports," and the inability to offer "policy advice and testimony to state officials and Congress" —were held "concrete, particularized, and actual" and "sufficient to survive a motion to dismiss." *Pub. Int. Legal Found., Inc. v. Fontes*, 816 F. Supp. 3d 984, 991-92 (D. Ariz. 2026). *Fontes* also acknowledged that "[t]he Foundation's alleged inability to analyze that data and advocate for corrective measures implicates the NVRA's objectives." *Id*. at 991.

All considered, the Foundation has standing under the NVRA.

### B. The Foundation has Standing Under the Equal Protection Clause.

Discriminatory administration of a federal statutory benefit is itself a cognizable Equal Protection injury. *Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984). "When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group … [t]he 'injury in fact' … is the denial of equal treatment resulting from the imposition of the barrier[.]" *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993); *see also ACLU of N.M. v. Santillanes*, 546 F.3d 1313, 1319 (10th Cir. 2008) (explaining that with respect to a voter identification requirement imposed on in-person voters only, "The injury in fact is the denial of equal treatment.").

A plaintiff "seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing." *City of Jacksonville*, 508 U.S. at 666. Rather, a plaintiff "need only demonstrate that it is able and ready" to obtain the benefit "and that a discriminatory policy prevents it from doing so on an equal basis." *Id*.

The Foundation requested the SVRL, Compl. ¶ 20, and is thus "able and ready" to receive the NVRA's benefit.[3] Oklahoma's "discriminatory policy" prevents the Foundation from receiving the SVRL on an equal basis with Oklahoma citizen-residents.

---

[3] The Foundation explained the following in its initial correspondence to Defendant: "This letter is also a request to receive the full access granted to residents and political persons. We cannot currently complete the request form because it requires us to attest to being an eligible recipient under state law. We are, however, happy to submit any documentation required to complete the request, so long as it complies with federal law." ECF No. 1-1 at 2.

*See* ECF No. 1-2 (denying request under 26 O.S. § 7-103(B)). The Foundation therefore has standing under the Equal Protection Clause.

## II. *Voter Reference Foundation v. Torrez* Compels Denial of Defendant's Rule 12(b)(6) Motion.

### A. Under *Voter Reference Foundation*, the SVRL is a Record Subject to Disclosure Under the NVRA.

The Tenth Circuit has also foreclosed Defendant's argument that the SVRL is not within the NVRA's scope, ECF No. 13 at 11-21. *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068 (10th Cir. 2025).

Consider *Voter Reference Foundation*'s facts. The "dispute arose when VRF requested and published voter data received from the New Mexico Secretary of State's Office." *Id*. at 1072. The voter data VRF published was New Mexico's statewide voter registration list. *See id*. at 1073 n.2 ("The voter data consisted of the name, physical address, mailing address, year of birth, party affiliation, precinct assignment, jurisdiction, registrant ID number, associated districts, voting history, and method of voting for each registered voter in the State of New Mexico."). In response to VRF's publication of voter data, "the Office referred VRF to the New Mexico Attorney General for criminal investigation and prosecution pursuant to allegations that it violated New Mexico statutes that restrict use and sharing of voter data." *Id*. at 1073. VRF then filed an action alleging, in part, that the NVRA preempted New Mexico's use and sharing restrictions. *Id*.

The Tenth Circuit affirmed the district court's holding that the NVRA preempted New Mexico's restrictions on using and sharing voter data. *Id*. at 1089.

The Tenth Circuit's preemption ruling necessarily means that the statewide voter registration list is a record subject to disclosure under the NVRA. That is so because "a state law regulating disclosure of a record not falling under the Public Disclosure Provision cannot plausibly be preempted by the NVRA." *Pub. Int. Legal Found., Inc. v. Bellows*, 588 F. Supp. 3d 124, 132 (D. Me. 2022).

The Foundation alleges that the SVRL is subject to disclosure under the NVRA. Compl. ¶ 28 (collecting cases). The SVRL "concerns" the "implementation" of all of New Mexico's voter list maintenance activities. 52 U.S.C. § 20507(i)(1). Indeed, it is the end product of those activities. Under *Voter Reference Foundation*, Defendant's motion to dismiss under Rule 12(b)(6) must be denied.

Defendant believes *Voter Reference Foundation* can be disregarded because it did not evaluate the *entire* statewide voter registration list under a plain meaning analysis. *See* ECF No. 13 at 15-16. Not so. As stated, the Tenth Circuit could not have reached the preemption question unless the statewide voter registration list is within the NVRA's scope. Moreover, the court's analysis for the additional records requested applies equally to statewide voter registration list. The additional records were merely a subset of the statewide list that included the same voter data. *See Voter Reference Found.*, 160 F.4th at 1075. The court found that although voter data is "dynamic," and must be generated to fulfill each request, it is a record subject to disclosure under the NVRA. *Id*. at 1084-86.

*Voter Reference Foundation* leaves no room to distinguish this action. The outcome is the same.

### B. Under *Voter Reference Foundation*, the NVRA Preempts Oklahoma's Residency Restriction.

*Voter Reference Foundation* controls the preemption analysis and compels denial of Defendant's motion.

"[T]here is no presumption against preemption in the Elections Clause and in NVRA jurisprudence." *Voter Reference Found.*, 160 F.4th at 1081. Instead, "the statutory text accurately communicates the scope of Congress's pre-emptive intent." *ITCA*, 570 U.S. at 14. Elections Clause legislation is read "simply to mean what it says." *Id.* at 15.

The Tenth Circuit concluded that the NVRA requires "public inspection" and "make[s] evident Congress's intent to support the transparency and circulation of voter data among the public to help detect and correct errors." *Voter Reference Found.*, 160 F.4th at 1081 (citing *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 54 (1st Cir. 2024)). "In other words, critical scrutiny and public audits of voter data were envisioned by Congress in passing the NVRA." *Voter Reference Found.*, 160 F.4th at 1082.

Upon that finding, the Tenth Circuit held that restrictions on the use and sharing of New Mexico's voter data—the statewide voter registration list—were preempted by the NVRA. *Id.* at 1082-84. "Put simply, making voter data unavailable for close public scrutiny disrupts the purpose and intended effects of the NVRA." *Id.* at 1082. That is so because "the consequent goal in widely circulating the voter data is so that any inaccuracies can be identified and corrected." *Id.* at 1083. "[W]hile there may be avenues in which New Mexico may restrict selling or loaning data without disrupting the purposes of the NVRA, it is a step too far to prohibit public access altogether." *Id.* at 1084.

That last part dooms Defendant here. Like New Mexico, Oklahoma "prohibit[s] public access altogether." *Id*.

The Foundation intends to use the SVRL consistent with the NVRA's purposes, as interpreted by the Tenth Circuit. The Foundation intends to closely scrutinize the SVRL—and the activities producing it—to identify and correct inaccuracies, primarily through education and advocacy. *See* Compl. ¶¶ 41-47. Oversight and education lead to remedial action. Remedial action protects the electoral process and voting rights.

As in *Voter Reference Foundation*, so here: Oklahoma law prohibits "public" access and obstructs the NVRA's purposes. It is therefore preempted and unenforceable. *Id*. at 1084.

### III. No Justification Can Save a Preempted State Law.

Ordinarily, a discriminatory election law is balanced against the justifications for the law. *See Santillanes*, 546 F.3d at 1323. Not here. Oklahoma law is preempted because it conflicts with federal law. Preempted laws are "invalid." *Bishop v. Fed. Intermediate Credit Bank*, 908 F.2d 658, 660 (10th Cir. 1990). They are "nullified." *Hillsborough Cnty. v. Automated Med. Laboratories, Inc.*, 471 U.S. 707, 713 (1985). They "cease[] to be operative." *Ex parte Siebold*, 100 U.S. 371, 384 (1879).

A law preempted by Elections Clause legislation cannot be saved by an important state interest, or even a compelling one. If it could, states would be free to write their own exceptions to uniform, federal voting laws, turning the Elections Clause on its head. States are free to regulate federal elections, "but only so far as Congress declines to pre-empt state legislative choices[.]" *Foster v. Love*, 522 U.S. 67, 69 (1997).

Congress preempted Oklahoma's attempt to deny the SVRL to the "public." Whatever the reason for Oklahoma's attempt, it cannot save its law.

**IV. Oklahoma Cannot Justify Denying Access to the Foundation.**

There is no reason to evaluate Oklahoma's justification for its residency restriction because the NVRA preempts it. If the court reaches this issue, it should still deny Defendant's motion.

Oklahoma reasons that it may deny the Foundation access to the SVRL to prevent "bad actors" from improperly using personal information and to deter "commercial harvesting" of voter data. ECF No. 13 at 22.

Oklahoma's rationale is undermined by the apparent absence of a statute prohibiting recipients with full access from providing the list to ineligible requestors situated like the Foundation, should they choose to do so. *Jud. Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 445 (D. Md. 2019) (explaining the ability to circumvent disclosure restrictions via straw-purchaser reveals the emptiness of the rationale upon which the restriction is allegedly based).

It is also irrational to treat the Foundation and all other ineligible requestors as "bad actors" who will misuse voter data, while believing the millions of Oklahomans with full access will uniformly use voter data lawfully. Oklahoma may regulate misuse of voter data; it may not "prohibit public access altogether." *Voter Reference Found.*, 160 F.4th at 1084.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss should be denied.

For the Plaintiff Public Interest Legal Foundation:

/s/ *Carolyn Valdes*
Noel H. Johnson* (Wis. Bar #1068004)
Carolyn Valdes** (Ky. Bar #101013)
Public Interest Legal Foundation, Inc.
107 S. West Street, Suite 700
Alexandria, Virginia 22314
Tel.: (703) 745-5870
Fax: (888) 815-5641
njohnson@PublicInterestLegal.org
cvaldes@PublicInterestLegal.org
**Motion for admission pro hac vice forthcoming*
***Motion for admission pro hac vice granted*

Ryan Haynie, OBA No. 32796
OCPA Center for Law & Liberty
1401 N. Lincoln Blvd.
Oklahoma City, OK 73104
Tel: (405) 590-6070
ryan@ocpathink.org

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2026, I electronically filed the foregoing using the Court's ECF system, which will serve notice on all parties.

/s/ *Carolyn Valdes*
Carolyn Valdes
Counsel for Public Interest Legal Foundation