**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| PUBLIC INTEREST LEGAL FOUNDATION, INC.<br>*Plaintiff,*<br>v.<br>PAUL ZIRIAX, in his official capacity as the Secretary of the State Election Board for the State of Oklahoma,<br>*Defendant.* | NO.5:26-CV-01440-HE |

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

GARRY M. GASKINS, II, OBA #20212
*Solicitor General*
OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Main: (405) 521-3921
Garry.Gaskins@oag.ok.gov

*Counsel for Defendant*

**AUGUST 17, 2026**

# TABLE OF CONTENTS


**INTRODUCTION** .......... 1
**ARGUMENT** .......... 1

**I. PILF Has Failed to Establish Standing.** .......... 1

**A. PILF's Alleged Informational Injury Under the NVRA Requires a Showing of Downstream Consequences.** .......... 1

**B. PILF Has Failed to Show Downstream Consequences.** .......... 4

**C. Defendant Has Not Conceded Standing on PILF's Equal Protection Claim.** .......... 6

**II. *Torrez* Does Not Compel Denial of Defendant's Rule 12(b)(6) Motion.** .......... 6

**A. *Torrez* Did Not Decide Whether a Statewide Voter List Is a "Record" Under Section 8(i).** .......... 6

**B. Oklahoma's Residency Restriction Is Not Preempted.** .......... 8

**III. Oklahoma's Law Withstands Rational Basis Review.** .......... 9

# TABLE OF AUTHORITIES

## Cases

*Campaign Legal Ctr. v. Scott*,
49 F.4th 931 (5th Cir. 2022) .......... 3

*Fed. Election Comm'n v. Akins*,
524 U.S. 11 (1998) .......... 2, 3, 5

*Foster v. Love*,
522 U.S. 67 (1997) .......... 9

*Heller v. Doe*,
509 U.S. 312 (1993) .......... 9, 10

*Laufer v. Looper*,
22 F.4th 871 (10th Cir. 2022) .......... 3

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 5

*McBurney v. Young*,
569 U.S. 221 (2013) .......... 10

*McGowan v. Maryland*,
366 U.S. 420 (1961) .......... 9

*PILF v. Bellows*,
588 F. Supp. 3d 124 (D. Me. 2022) .......... 7

*PILF v. Benson*,
136 F.4th 613 (6th Cir. 2025) .......... 3, 5

*PILF v. Fontes*,
816 F. Supp. 3d 984 (D. Ariz. 2026) .......... 6

*PILF v. Nago*,
174 F.4th 664 (9th Cir. 2026) .......... 4, 7, 8

*PILF v. Schmidt*,
146 S. Ct. 1785 (2026) .......... 2

*PILF v. Sec'y Commonwealth of Pa.*,
136 F.4th 456 (3d Cir. 2025) .......... 2, 4, 5

*Pub. Citizen v. U.S. Dep't of Just.*,
491 U.S. 440 (1989) .......... 2, 3, 5

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 2

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 1, 2, 3, 6

*United States v. Benson*,
819 F. Supp. 3d 753 (W.D. Mich. 2026) .......... 8

*United States v. Titley*,
770 F.3d 1357 (10th Cir. 2014)....................9

*Voter Reference Found., LLC v. Torrez*,
160 F.4th 1068 (10th Cir. 2025)....................1, 4, 6, 7, 8

**Statutes**

52 U.S.C. § 20501....................4

52 U.S.C. § 20507....................1

OKLA. STAT. tit. 26, § 7-103.2....................8

## INTRODUCTION

"As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 430–31 (2021). PILF has not carried that burden. And on the merits, PILF never answers the question at the heart of this case: inspection rights *to what*? PILF insists that the NVRA gives "inspection rights" to the "public." Doc. 14 at 1. But the NVRA opens to inspection only "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). PILF has never requested such records. Instead, it has requested Oklahoma's entire voter registration list, along with the personal identification information of every registered Oklahoman. Neither the NVRA nor the Fourteenth Amendment entitles PILF to that list, and PILF's lead authority, *Voter Reference Foundation, LLC v. Torrez*, decided a different question. The Complaint should be dismissed.

## ARGUMENT

### I. PILF Has Failed to Establish Standing.

#### A. PILF's Alleged Informational Injury Under the NVRA Requires a Showing of Downstream Consequences.

For standing purposes, PILF argues that a request and a denial are all that Article III requires, on the theory that the NVRA's disclosure provision is a "sunshine" law like the Freedom of Information Act. Doc. 14 at 4–6. That theory cannot be squared with *TransUnion*, and the Third, Fifth, and Sixth Circuits have all rejected it.

*TransUnion* holds that a plaintiff does not satisfy the injury-in-fact requirement merely because a statute grants a right and "purports to authorize that person to sue to vindicate that

right." *TransUnion*, 594 U.S. at 426 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* (citation omitted). And a plaintiff asserting an informational injury must show "downstream consequences" from failing to receive the information. *Id.* at 442 (citation omitted). Critical here, an "asserted informational injury that causes no adverse effects cannot satisfy Article III." *Id.* (citation omitted).

PILF answers that *TransUnion* distinguished *Akins* and *Public Citizen* as cases "involv[ing] denial of information subject to public-disclosure or sunshine laws," and that the NVRA is such a law. Doc. 14 at 5–6 (citing *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440 (1989); *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998)). The Third Circuit rejected that reading of both *TransUnion* and the NVRA when PILF pressed it there. Under *TransUnion*, "statutory context is important," and the NVRA has "a purpose that goes farther than government transparency such as FOIA." *PILF v. Sec'y Commonwealth of Pa.*, 136 F.4th 456, 463 (3d Cir. 2025), *cert. denied sub nom. PILF v. Schmidt*, 146 S. Ct. 1785 (2026). Unlike FOIA, "[t]he required disclosure of certain records is merely one aspect of the statutory scheme in service of a greater purpose[,] … *the expansion of voter participation in federal elections*." *Id.* Denial alone suffices only where "disclosure of information is the essence of a statute, as it is in FOIA[.]" *Id.* at 464. But "Congress's purpose in enacting the NVRA targets an objective much broader and more expansive than access to records." *Id.* The court accordingly held that denial alone does not establish standing where a plaintiff asserts "an informational injury" arising from "a violation of a statute that contains a public disclosure aspect as part of its overall scheme[.]" *Id.* at 465. The Sixth Circuit agreed, holding that PILF's injury failed Article III because PILF "fail[ed]

to articulate specific downstream consequences." *PILF v. Benson*, 136 F.4th 613, 632 (6th Cir. 2025), *cert. denied*, 146 S. Ct. 1772 (2026).

Even if the disclosure provision were a sunshine law, the result would be no different. Read together, *TransUnion*, *Public Citizen*, and *Akins* still require downstream consequences. As the Fifth Circuit explained, the plaintiffs in *Public Citizen* and *Akins* had asserted such consequences: they needed the information to participate in the judicial selection and electoral processes, respectively. *See Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 938 (5th Cir. 2022) ("even in public disclosure-based cases, plaintiffs must and can assert 'downstream consequences'"). The Fifth Circuit accordingly held that NVRA plaintiffs who "offered no meaningful evidence regarding any downstream consequences" lacked standing. *Id.* at 937. The Tenth Circuit has harmonized the same cases the same way. In *Laufer v. Looper*, it held that the plaintiff lacked standing under *Spokeo* and *TransUnion* when she could show no downstream effects from the defendant's violation of an ADA regulation requiring places of public accommodation to provide certain information for individuals with disabilities. 22 F.4th 871, 874, 881 (10th Cir. 2022). In so holding, the Tenth Circuit explained that "[i]n *Public Citizen* and *Akins*, the plaintiffs identified such adverse effects" (an intent to use the requested information to participate in the judicial selection and political processes), so that the information had "some relevance" to them. *Id.* at 881 (citation omitted). In sum, the Tenth Circuit did not treat the sunshine-law character of the statutes in *Public Citizen* and *Akins* as dispensing with the requirement of showing adverse effects.

Additionally, PILF's reliance on *Nago* is revealing. That same opinion holds that a statewide voter list is not a record subject to disclosure under Section 8(i) at all. *PILF v. Nago*,

174 F.4th 664, 679 (9th Cir. 2026). PILF cannot claim the benefit of *Nago*'s standing analysis while disowning its holding concerning the very records PILF seeks. Nor does the Tenth Circuit footnote PILF cites supply the missing injury: the standing holding in *Torrez* rested on a credible threat of prosecution for publishing data the requester had already received. Doc. 14 at 4 n.1 (quoting *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1078 (10th Cir. 2025)). PILF faces no such threat here.

**B. PILF Has Failed to Show Downstream Consequences.**

PILF's alleged consequences are speculative, and they lack a nexus to the interests Congress sought to protect. Again, the NVRA "aims at increasing citizen participation in federal elections," and Congress enacted it principally because it "was wary of the devastating impact [voter roll] purging efforts previously had on the electorate." *Sec'y Commonwealth of Pa.*, 136 F.4th at 466–67 (citation omitted). Its four stated purposes are to increase registration, to enhance participation, to protect the integrity of the electoral process, and to ensure accurate and current rolls. 52 U.S.C. § 20501(b).

PILF points principally to a report it says it is "currently planning to draft and publish" about "specific and general errors" in the Statewide Voter Registration List, together with a comparison of Oklahoma's "current list maintenance practices" to its own prior report. Doc. 14 at 7. But PILF has never requested a single record of Oklahoma's list maintenance practices. It requested the voter list itself. Doc. 1 at ¶ 20; Doc. 1-1 at 1. A plan to compare records PILF has never asked for is not a consequence of Defendant's negative response to the request PILF actually made here.

The Third Circuit rejected materially identical assertions. "[T]he production and dissemination of 'educational materials'" is not "essential to a concrete interest protected by the statute as was the case in *Public Citizen* and *Akins*," and "there is an insufficient nexus among the downstream consequences identified by PILF and the interest that Congress sought to protect." *Sec'y Commonwealth of Pa.*, 136 F.4th at 467. Scrutinizing records is not an enumerated purpose of the NVRA, nor does it "advance the expansion of voter registration and participation in federal elections." *Id.* PILF offers no explanation of how its inability to scrutinize Oklahoma's voter list has hindered participation in federal elections in Oklahoma, and it alleges no ties to Oklahoma or to any of its voters. "[A]s admirable as PILF's mission may be, PILF is not an attorney general with general standing to enforce the provisions of the NVRA in the absence of proof that it maintains a personal and constitutionally significant stake in the matter." *Id.* at 468.

PILF's only answer is that those courts ruled after discovery. Doc. 14 at 7. That distinction does not help it. The Third and Sixth Circuits announced a legal standard governing what an NVRA plaintiff must show, and the Sixth Circuit measured PILF's showing against its pleadings: "Neither the complaint nor PILF's briefs identify ... specific projects, research papers, or educational outreach efforts that were directly impacted." *Benson*, 136 F.4th at 631 (quoted at Doc. 14 at 9). General allegations are presumed to embrace the specific facts necessary to support a claim, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), but PILF must still allege a concrete injury, and no amount of factual development converts a plan to study and to speak into the concrete harm Article III demands.

The only decision PILF cites accepting such consequences is an out-of-circuit district court opinion. Doc. 14 at 9 (citing *PILF v. Fontes*, 816 F. Supp. 3d 984, 991–92 (D. Ariz. 2026)). *Fontes* reasoned that those courts ruled on summary judgment and that a court may not import Rule 12(b)(6) plausibility into the standing inquiry. *Id.* at 991. But Defendant does not ask this Court to weigh how likely PILF's plans are. The defect is legal: studying records, publishing analyses, and advising officials are not consequences bearing a nexus to the interest Congress protected, and that holding does not change with the posture. To the extent *Fontes* concluded otherwise, it departs from the Third and Sixth Circuits and should not be followed. As the Supreme Court put it: "No concrete harm, no standing." *TransUnion*, 594 U.S. at 417.

**C. Defendant Has Not Conceded Standing on PILF's Equal Protection Claim.**

PILF asserts that Defendant challenged only one basis for standing, the NVRA, and "thereby conced[ed]" the second. Doc. 14 at 3. That is not accurate. Defendant's motion challenges PILF's injury in fact, and a concrete injury is required for every claim, whether brought under the NVRA, the Equal Protection Clause, or any other source of law. Standing is jurisdictional; it is not conceded by silence and cannot be assumed. Regardless, the Court need not reach the question, because PILF's Equal Protection claim fails on the merits.

**II. *Torrez* Does Not Compel Denial of Defendant's Rule 12(b)(6) Motion.**

**A. *Torrez* Did Not Decide Whether a Statewide Voter List Is a "Record" Under Section 8(i).**

PILF contends that the Tenth Circuit has foreclosed Defendant's reading of the disclosure provision. Doc. 14 at 11–13. It has not. In *Torrez*, no party argued that the content of the requested data fell outside Section 8(i), and the court said so expressly: "the parties focus[ed] their arguments not on whether the requested voter data in fact concern[ed] the

*implementation* of relevant program and activities but on whether 'record' includes dynamic, electronic documents and whether they encompass data that is allegedly 'newly created.'" *Torrez*, 160 F.4th at 1084 (emphasis added); *see also Nago*, 174 F.4th at 682 n.11 (explaining that *Torrez* did not address the argument at issue here).

PILF's syllogism therefore fails. It reasons that preemption of New Mexico's use and sharing restrictions "necessarily means" the statewide list is a record subject to disclosure. Doc. 14 at 11–12. The plaintiff in *Torrez* had already received New Mexico's voter data from a third party and published it on its website; New Mexico responded by referring it for prosecution under statutes restricting the use and sharing of that data. *Torrez*, 160 F.4th at 1073–75. The question presented was what a recipient may do with data in hand, not whether voter rolls in their entirety are subject to disclosure in the first instance. It's apples and oranges.

PILF's alternative framing fares no better. It says the list "concerns" the implementation of Oklahoma's list maintenance activities because it is "the end product of those activities." Doc. 14 at 12. The Ninth Circuit considered that reasoning and rejected it: the better reading of Section 8(i) is that voter lists are "not records concerning the implementation of those programs ... but rather the objects of the implemented programs, which are not" covered. *Nago*, 174 F.4th at 682.

PILF's own premise proves Defendant's point. As PILF puts it, "a state law regulating disclosure of a record not falling under the Public Disclosure Provision cannot plausibly be preempted by the NVRA." Doc. 14 at 12 (quoting *PILF v. Bellows*, 588 F. Supp. 3d 124, 132 (D. Me. 2022)). Just so. Whether Oklahoma's law is preempted depends on whether Section 8(i) reaches the voter list: the question *Torrez* did not decide, and the one the Ninth Circuit

answered against PILF. A statewide list is not a covered record "because covered 'records' are those about efforts to ensure the accuracy of voter lists, *not voter lists themselves*." *Nago*, 174 F.4th at 679 (emphasis added); *see also United States v. Benson*, 819 F. Supp. 3d 753, 764 (W.D. Mich. 2026), *aff'd*, 179 F.4th 470 (6th Cir. 2026) ("[A] natural reading of § 20507(i) suggests that it requires states to disclose information regarding the process by which they maintain their voter registration list but not the list itself."). Defendant explained why that reading follows from the text, structure, and context of Section 8. Doc. 13 at 11–21. PILF offers no textual response.

**B. Oklahoma's Residency Restriction Is Not Preempted.**

The language PILF draws from *Torrez* describes New Mexico's effort to restrict the circulation of data it had already disclosed: "it is a step too far to prohibit public access altogether." 160 F.4th at 1084; Doc. 14 at 13–14. Oklahoma imposes no comparable restriction. As PILF itself observes, no Oklahoma statute prohibits a recipient of the list from providing it to others. Doc. 14 at 15. Oklahoma silences no one who obtains the list.

Nor does Oklahoma "prohibit[] public access altogether," as PILF claims. Doc. 14 at 14. Under OKLA. STAT. tit. 26, § 7-103.2(B)(1), the complete voter registration list is available to "bona fide residents of this state who are citizens of the United States;" to "official representatives of political parties recognized by the laws of this state;" to "candidates for office in this state and their official representatives;" and to "other persons authorized by state law." Oklahomans may obtain the list, scrutinize it, and publicize what they find. And PILF has never sought the records that Section 8(i) does cover.

PILF's remaining preemption argument assumes its conclusion. It says that no state interest can save a preempted law. Doc. 14 at 14–15. But States may regulate federal elections

"so far as Congress declines to preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); Doc. 14 at 14. Congress did not require the disclosure of statewide voter lists, so Oklahoma's judgment about who may obtain its list is a state legislative choice Congress left undisturbed. There is no conflict, and thus no occasion to ask whether a state interest could overcome one.

## III. Oklahoma's Law Withstands Rational Basis Review.

As explained in Defendant's Motion to Dismiss, it is PILF's burden "to negative every conceivable basis which might support" the statute. *United States v. Titley*, 770 F.3d 1357, 1359 (10th Cir. 2014) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). The statute is "accorded a strong presumption of validity," and it must be sustained "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (citation omitted). The classification offends the Constitution "only if [it] rests on grounds wholly irrelevant to the achievement of the State's objective." *Id.* (quoting *McGowan v. Maryland*, 366 U.S. 420, 425 (1961)).

PILF does not carry that burden. It says first that Oklahoma's rationale is "undermined by the apparent absence of a statute prohibiting recipients with full access from providing the list to ineligible requestors." Doc. 14 at 15. But even assuming, without conceding, that PILF is correct about "undermined," that is not the same thing as "disproved." Rational basis review, that is, tolerates an imperfect fit between means and ends. *See Heller*, 509 U.S. at 321. A State need not close every avenue of misuse before it may close one. Limiting the list to Oklahomans, who remain subject to Oklahoma's laws and courts, makes it harder for those who would sell or misuse the personal identification information of Oklahomans to obtain it.

That a determined requester might obtain the list from an eligible recipient does not render the eligibility requirement irrational; the question is not whether the classification is airtight but whether it rests on grounds "wholly irrelevant" to the State's objective. *Id.* at 324.

PILF says next that it is irrational to treat nonresidents as potential bad actors while trusting residents with the same data. Doc. 14 at 15. A State may draw that line, though, and reasonably so. The Supreme Court upheld Virginia's citizens-only public records law against a nonresident's challenge, reasoning that such a regime is a mechanism by which the citizens who hold sovereign power obtain an accounting from their own officials. *McBurney v. Young*, 569 U.S. 221, 228 (2013). Oklahoma may likewise conclude that its own residents have a distinct stake in the accuracy of its rolls and are answerable to its courts for the misuse of its citizens' information. Rational basis review requires no more.

## CONCLUSION

Plaintiff's Complaint should be dismissed for lack of subject-matter jurisdiction and, alternatively, with prejudice for failure to state a claim.

Respectfully Submitted,

s/*Garry M. Gaskins, II*

GARRY M. GASKINS, II, OBA NO. 20212
*Solicitor General*

OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Main: (405) 521-3921
Garry.Gaskins@oag.ok.gov

*Counsel for Defendant*